# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KEITH LAVERPOOL, <br><br>      Plaintiff <br><br>   v. <br><br> TAYLOR BEAN & WHITAKER REO LLC, *et al.*, <br><br>      Defendants | Civil Action No. 16-690 (CKK) |

## MEMORANDUM OPINION
(January 10, 2017)

Plaintiff Keith Laverpool brings this action *pro se* challenging the foreclosure of his property located in Lithonia, Georgia and the servicing of his mortgage prior to the foreclosure. Plaintiff names three separate classes of defendants in this action: (i) the private banking institutions that serviced his mortgage, Taylor Bean & Whitaker REO, LLC; Taylor Bean & Whitaker Mortgage; and RoundPoint Mortgage Servicing Corp. (collectively, "Mortgage Defendants"); (ii) Judge Clarence F. Seeliger of the Georgia State Superior Court, who presided over the foreclosure action ("Defendant Seeliger"); and (iii) the U.S. Department of Housing and Urban Development ("HUD"). Plaintiff brings various civil rights claims under 42 U.S.C. § 1983, claims of "Dishonest government Services and Mail Fraud," and claims of "racketeering violations" or RICO violations under 18 U.S.C. §§ 1961-1968. Compl. ¶¶ 1-6, 68-96. While Plaintiff's claims and legal theories are not a model of clarity, the Court construes his *pro se* filings liberally in considering the instant motions. *Toolasprashad v. Bur. of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002).

Presently before the Court are the motion to dismiss filed by Judge Seeliger and the separately filed motion to dismiss of the three Mortgages Defendants.[1] Also before the Court is Plaintiff's Motion to Amend Complaint.  Although the Court has taken pains to advise Plaintiff of the consequences of failing to respond to the dispositive motions filed by the Mortgage Defendants and Judge Seeliger, Plaintiff has not filed any opposition to the Motions to Dismiss currently before the Court.[2] The Court, nonetheless, shall not treat these Motions as conceded, but shall examine the substance of Defendants' asserted bases for dismissal. Upon consideration of the parties' submissions,[3] the applicable authorities, and the entire record, the Court finds that

---

[1] The Court shall address by separate Order the fifth defendant, HUD, which has not been served with the Complaint in this action and consequently has not submitted any motions for the Court's consideration.

[2] On June 6, 2016, the Court issued a "*Fox Order*" (ECF No. 6) advising Plaintiff that "he must respond to Defendants' motions [to dismiss] by no later than **July 11, 2016**. If Plaintiff does not file a response, the Court will treat the motion(s) as conceded and dismiss those parties." Jun. 6, 2016 Order (ECF No. 6) at 2 (emphasis in original). On July 8, 2016, Plaintiff requested an extension of 30 days to respond to Defendants' motions to dismiss. Pl.'s Mot. to Extend Time (ECF. No. 13) at 6. The Court granted Plaintiff's request by Minute Order on July 26, 2016, and granted Plaintiff an extension in excess of his request, requiring him to respond to the Motions to Dismiss by August 10, 2016. By this same Minute Order, the Court directed Plaintiff to "file any reply in support of his Motion to Amend, which is opposed on the grounds of futility, by that same date, August 10, 2016." Plaintiff has filed neither an opposition to the motions to dismiss currently before the Court nor reply in support of his Motion to Amend.

[3] The Court's consideration has focused on the following documents:

- Defs.' Taylor Bean & Whitaker REO, LLC; Taylor Bean & Whitaker Mortgage; and RoundPoint Mortgage Servicing Corp.'s Mot. to Dismiss ("Mortgage Defs.' Mot. to Dismiss"), ECF No. 4;
- Def. Clarence F. Seeliger's Mot. to Dismiss ("Seeliger Mot. to Dismiss"), ECF No. 5;
- Pl.'s Mot. for Leave to Amend Compl. ("Pl.'s Mot. to Amend"), ECF No. 14;
- Pl.'s Proposed Am. Compl. ("Am. Compl.), ECF No. 14, Ex. 1;
- Def. Seeliger's Response to Pl.'s Mot. to Amend Compl. ("Def. Seeliger's Opp'n"), ECF No. 18;
- Mortgage Defs.' Objection to Pl.'s Mot. for Leave to Amend Compl. ("Mortgage Defs.' Opp'n"), ECF No. 19;
- Complaint ("Compl."), ECF No. 1;

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

the Court lacks jurisdiction over the claims against Judge Seeliger and the Mortgage Defendants, and accordingly shall GRANT Defendant Judge Seeliger's [5] Motion to Dismiss and shall also GRANT the [4] Motion to Dismiss of Defendants Taylor Bean & Whitaker Reo LLC, Taylor Bean & Whitaker Mortgage, and Round Point Mortgage Servicing Corp. Furthermore, the Court shall DENY Plaintiff's [14] Motion for Leave to Amend Complaint as futile.

## I.   BACKGROUND

This action arises out of the circumstances surrounding the foreclosure of Plaintiff's residential property in DeKalb County, Georgia and is only Plaintiff's latest in a long line of challenges to the foreclosure of his property. Whereas the resolution of the motions before the Court turn more on the procedural history of Plaintiff's prior litigation than on the underlying facts, the Court shall set out the factual background only to the extent necessary to fairly address the motions before it. However, the Court shall set out in greater detail the history of the prior litigation that preceded Plaintiff's filing of this action.

### A.  Factual Background

In June 2007, Plaintiff obtained a loan ("the Loan") from Taylor Bean & Whitaker Mortgage in the amount of $177,219. Compl. ¶ 13. The Loan was secured by the deed to the residential property located at 1580 Smithson Court, Lithonia, Georgia. *See, e.g., id.*, Ex. J at 2. It appears on September 23, 2009, RoundPoint Mortgage Servicing Corporation began servicing Plaintiff's loan. *Id.* ¶ 26; *id.*, Ex. E (Jan. 27, 2015, Letter from Troutman Sanders to Plaintiff indicating that Taylor, Bean & Whitaker Mortgage Corp. "is no longer servicing your Loan. Effective as of September 23, 2009, servicing of the Loan was transferred to RoundPoint Mortgage Servicing Corporation."). Experiencing difficulties meeting his payment obligations under the Loan, Plaintiff requested and indeed received temporary assistance from RoundPoint;

in a letter dated July 12, 2012, RoundPoint agreed to accept reduced monthly payments for a period of three months under a Temporary Repayment Agreement. Compl., Ex. C; *see also* Compl. ¶ 32; Seeliger Mot. to Dismiss at 7. Plaintiff continued to have difficulties making payments on the Loan and made additional efforts "in the process of navigating the loan modification process." Compl. ¶ 34. Plaintiff's failure to make payments on the Loan ultimately led to the foreclosure action at issue in this matter.

### B. Foreclosure Action and Prior Collateral Proceedings

Although the foreclosure proceedings are at the heart of Plaintiff's claims, his Complaint and the exhibits annexed thereto do not lay out the foreclosure proceedings particularly clearly. Accordingly, the Court looks to the recitation of the facts surrounding the foreclosure proceedings set out in the Opinion and Order of the United States District Court for the Northern District of Georgia in Plaintiff's wrongful foreclosure action, *Laverpool v. Taylor, Bean & Whitaker Mortgage Corp.*, No. 1:15cv566, 2005 WL 8179844 (N.D. Ga. Dec. 7, 2015) ("*Laverpool II*").[4] *See Fletcher v. Evening Star Newspaper Co.*, 133 F.2d 395, 395 (D.C. Cir. 1942) (permitting the court to take judicial notice of opinions involving "the same subject matter or questions of a related nature between the same parties"); *see also infra* section III.A (further discussing the permissibility of the Court's evaluation of the record beyond the complaint in evaluating whether a case must be dismissed for lack of subject matter jurisdiction). Wherever possible, however, the Court shall also refer to Plaintiff's Complaint.

Plaintiff again defaulted on the Loan obligations, ultimately—though not immediately— resulting in the foreclosure proceedings that Plaintiff challenges in this action. By letter dated

---

[4] While Judge Seelinger's April 14, 2015, Order includes a recitation of the history of the foreclosure proceeding, the Court has relied on other sources when discussing the history of that proceeding whenever possible.

August 28, 2014, RoundPoint notified Plaintiff that he was in default. Compl., Ex. F.[5] Plaintiff

appears to have completed an application for loan modification on September 1, 2014, using the

Uniform Borrower Assistance Form provided to him by Roundpoint. *Id.* It is unclear to this

Court whether RoundPoint ever received this September 1, 2014, application for loan

modification, though the Court will accept as true Plaintiff's assertion that he "submitted

documentation for a loan modification with RoundPont Mortgage Servicing Corporation." *Id.* ¶

18.[6] The Court nonetheless notes that Plaintiff seems to implicitly acknowledge that even though

he sent the request, it does not appear to have been processed.[7] *Id.*, Ex. F. The Court additionally

notes that the United States District Court for the Norther District of Georgia found that

Plaintiff's first application for loan modification with RoundPoint was submitted on "January 9,

2015, at the earliest." *Laverpool II*, 2005 WL 8179844, at *2.

---

[5] It is unclear to this Court when Plaintiff defaulted on the Loan or whether the above-mentioned notice was the first that he received from RoundPoint. Neither the Complaint, its attachments, nor the pleadings of either Plaintiff or Defendants clarify the particular timeline of Plaintiff's troubled payment history. While the Court's resolution of the current motions does not turn on these particular details, the Court simply notes this instance as an example of where the Court would prefer greater clarity but has made due with the submissions before it. The Court further notes that the lack of clarity seems to have plagued the prior proceedings related to this case. For instance, the United States District Court for the Northern District of Georgia, in laying out the factual background of the related case before it wrote: "At some point, Plaintiff defaulted on his loan obligations." *Laverpool II*, 2005 WL 8179844, at *2. Judge Seeliger's Motion to Dismiss similarly is no more specific as to the time of Plaintiff's default than to echo the words of the Northern District of Georgia. Seeliger Mot. to Dismiss at 7.

[6] While Plaintiff asserts that he made this submission on August 1, 2014, the documents he appends as Exhibit F to his Complaint and to which he refers in this paragraph are dated September 1, 2014, and the Court assumes that the August 1, 2014, reference is simply a typographical error.

[7] While in Paragraph 52 of the Complaint, in which Plaintiff refers to a January loan modification application, he alleges "Plaintiff's last attempt was received and set up by Scott Curry Portfolio Specialist for RoundPoint Mortgage Servicing Corporation," Plaintiff's language in Paragraph 51, in which he alleges only that he "submitted" the documentation included in Exhibit F but is silent as to the receipt thereof by RoundPoint is significant.

Following Plaintiff's default on his loan obligations, Taylor Bean Whitaker Mortgage ("TBW Mortgage") initiated foreclosure proceedings. In a letter prepared by counsel and dated December 29, 2014, TBW Mortgage advised Plaintiff of his default on the Loan and that a foreclosure sale of the property securing the loan (his residential property located at 1580 Smithson Court) would take place on February 3, 2015. *Id.*, at *2. The sale was held and the Property was purchased by TBW Mortgage, which filed a petition on February 23, 2015, in DeKalb County Superior Court, seeking to have the court confirm and approve the foreclosure sale ("Confirmation Action"). *Id.*; *see also* Seeliger Mot. to Dismiss, Ex. A. This Confirmation Action was assigned to Judge Seeliger, who issued an order on April 14, 2015, reviewing and approving of the manner in which the foreclosure sale had been conducted, and finding that "Petitioner fulfilled all of the legal requirements of conducting a non-judicial foreclosure sale required by statute, including notice, advertisement, and conduct of sale. The property at issue brought its true market value of $110,000.00 at the time of the foreclosure sale. The Court hereby confirms the foreclosure sale conducted by Petitioner regarding the property." *Taylor Bean & Whitaker Mortgage v. Laverpool*, No. 15cv2569-3 (DeKalb Cnty. Super. Ct. Apr. 14, 2015) (Order confirming foreclosure sale); Seeliger Mot. to Dismiss, Ex. B at 2. Plaintiff filed a motion for reconsideration, which the Superior Court denied on June 24, 2015; and filed a notice of appeal with the Court of Appeals for the State of Georgia, which dismissed the appeal on August 26, 2015, for lack of jurisdiction on account of Plaintiff's failure to timely file his notice of appeal. *Laverpool v. Taylor, Bean & Whitaker Mortgage Corp.*, No. A15A2293 (Ga. Ct. App. Aug. 26, 2015) (Order dismissing appeal).

As these foreclosure proceedings commenced and proceeded, Plaintiff pursued multiple avenues in seeking to protect his property against foreclosure. Plaintiff again applied for loan

modification, again submitting the Uniform Borrower Assistance Form dated January 1, 2015.

Compl., Ex. H. RoundPoint appears to have received and processed this second request. *Id.*, Ex.

G (e-mails between Scott Curry, a "Portfolio Specialist" with RoundPoint, and Plaintiff dated

between January 18, 2015, and January 20, 2015, seemingly referring to Plaintiff's loan

modification application dated January 1, 2015).

Additionally, in the months leading up to TBW Mortgage's issuance of the foreclosure

notice letter on December 29, 2014, Plaintiff filed four separate bankruptcy cases in the Northern

District of Georgia. Each was dismissed. *Laverpool II*, 2015 WL 8179844, at *1, n.1. Plaintiff

also filed two separate actions in the Superior Court of DeKalb County, Georgia, both of which

were removed by the defendants to the United States District Court for the Northern District of

Georgia. In the first, which Plaintiff filed on December 3, 2014, Plaintiff named TBW Mortgage,

RoundPoint, and MERS as defendants in an action to quiet title as to his residential property

which secured the Loan. *Laverpool v. Taylor Bean & Whitaker Mortgage Corp.*, No. 1:15cv78

(N.D. Ga. removed Jan. 9, 2015) ("*Laverpool I*"). After the defendants had removed the case to

Federal Court and filed their motion to dismiss for failure to state a claim, Plaintiff voluntarily

dismissed the action on January 16, 2015. *See Laverpool II*, 2015 WL 8179844 at *1 n.1.

In his second suit, filed on January 26, 2015, Plaintiff raised a claim of attempted

unlawful foreclosure, sought emergency injunctive relief to stop the foreclosure sale, and also

sought compensatory and punitive damages. *Laverpool II*, No. 1:15cv566 (N.D. Ga. removed

Feb. 26, 2015). On December 7, 2015, the court dismissed the case upon the defendants' motion

for failure to state a claim. *Laverpool II*, 2015 WL 8179844, at *2. Plaintiff filed a Notice of

Appeal with the United States Court of Appeals for the Eleventh Circuit and sought leave to

proceed on appeal *in forma pauperis*. The District Court denied his Application to Appeal *In*

*Forma Pauperis*, finding that his Complaint "fail[ed] to state a viable claim for relief, his statement of issues to be appealed bears no legal or factual relation to the issues that required dismissal of Plaintiff's Complaint. This action is simply Plaintiff's latest attempt to challenge the validity of his mortgage debt and delay foreclosure and dispossession following his default on his loan obligations." *Laverpool II*, No. 1:15cv566 (N.D. Ga. Mar. 29, 2016) (Opinion & Order denying Application to Appeal IFP) at 7-8, ECF No. 16. The court thus concluded that the appeal was not taken in good faith and that the application to proceed on appeal *in forma pauperis* must be denied. *Id.* at 8. The Court of Appeals for the Eleventh Circuit similarly concluded that the appeal was frivolous, lacking "arguable merit either in law or fact," and therefore denied Plaintiff's motion to proceed *in forma pauperis* after a brief substantive review of the case. *Laverpool II*, No. 15-15780 (11th Cir. Nov. 9, 2016) (Order denying motion for IFP status).

### C.  Plaintiff's Particular Claims against Defendants

In the present action, Plaintiff seeks this Court's intervention regarding the foreclosure sale of his residential property that secured the Loan and reasserts claims that both federal and Georgia state courts have already rejected. Plaintiff styles his claims as presenting a federal question, alleging violations under the Hobbs Act and RICO provisions, and bringing forth constitutional challenges under the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments. Compl. ¶ 8. While Plaintiff's theories as to the liability of each defendant are not entirely clear, the Court shall construe them liberally and attempt to summarize them briefly.

Just as in both the Georgia state and federal court proceedings, Plaintiff's claims here revolve around his assertion that the foreclosure on his property was a part of the Mortgage Defendants' pattern and practice of unfair lending procedures, including "'Dual-Tracking,'" and

that the Georgia state and federal courts were complicit in permitting the Mortgage Defendants to pursue foreclosures improperly. *Id.* ¶¶ 33-38. Plaintiff seems to assert, in essence, that the Mortgage Defendants' practices and Georgia state law are not in accordance with federal efforts undertaken to protect borrowers following the national mortgage crisis. Plaintiff alleges that the "void in Georgia law opens the door for the State and the Corporations to defraud the Government of funds set aside for its Citizens," *id.* ¶ 42, and further allows the "Banks/Mortgage companies to put Fraud on the Court," *id.* ¶ 44. Plaintiff argues, it appears, that in his case, this fraud and illegality took shape in what he characterizes as impermissible dual-tracking: Mortgage Defendants, he claims, pursued foreclosure on the Property while Plaintiff simultaneously pursued loan modification to avoid foreclosure.  *Id.* ¶¶ 33-35, 48-54. Plaintiff also seems to argue that the foreclosure process was defective because "[a]bsent a Landlord-Tenant relationship TWB REO LLC doesn't have standing to bring this action before the court leaving the Court in want of Jurisdiction . . . TBW's Counsel brought the case in bad faith with deceit and lacks merit." *Id.* ¶¶ 60-61. Judge Seeliger, Plaintiff alleges, became a participant in the unlawful foreclosure process when he "knowingly, willingly, and intentionally joined the ongoing scheme, artifice, and/or conspiracy to deprive Plaintiff of fundamental and statutory rights and the Citizens of Georgia of honest government services." *Id.* ¶ 37.

From these assertions, Plaintiff makes five separate claims against the various defendants.[8] Plaintiff brings three separate civil rights claims under § 1983, *id.* ¶¶ 68-81, 86-89, alleging that all Defendants, including the Mortgage Defendants, acted "under color of state

---

[8] The Court shall not include Defendant HUD in its discussion, as the Court shall address the claims against HUD, as noted *supra*, by separate order.

law," *id.* ¶ 69. More specifically, in Count One, Plaintiff alleges due process violations,[9]

seemingly under the theory that the dual tracking of which Plaintiff complains and the judicial

confirmation of the foreclosure sale of his property resulted in a deprivation of property without

due process of law. In Count Two, Plaintiff adds an additional aspect to his due process claims,

alleging Fourteenth Amendment violations by the Mortgage Defendants and also clarifies his

theory of Judge Seeliger's involvement. Plaintiff here alleges that because he was not in a

landlord-tenant relationship with the Mortgage Defendants, they did not "have standing to bring

this action before the court leaving the Court in want of Jurisdiction." *Id.* ¶¶ 78-79. Therefore,

Plaintiff claims, Defendant Seeliger "became an accomplice and co-conspirator to violate among

other things Plaintiff's due process rights and opportunity to be heard" when he "negligently"

confirmed the foreclosure sale through proceedings over which Plaintiff claims the Superior

Court of DeKalb County lacked jurisdiction. *Id.* ¶ 78.

Plaintiff's Third and Fourth Counts are predicated on Mortgage Defendants' use of the

U.S. Mail to send him documents that, he claims were part of their "conspiracy or other scheme

or artifice to deprive the Citizens of Georgia of honest government services and Plaintiff of

fundamental and statutory rights." *Id.* ¶¶ 83-84. He therefore alleges against the Mortgage

Defendants claims of "Dishonest Government Services" and Mail Fraud. *Id.* ¶¶ 82-85 (Count 3).

Plaintiff further asserts, without more explanation or clarification, that this conduct violates the

Equal Protection Clause, and that he suffers this injury as a "Class of One." *Id.* ¶¶ 86-89 (Count

---

[9] Plaintiff also seems to refer to the Equal Protection Clause in this first Count when he claims "Plaintiff has been denied equal of the law under the program." Compl. ¶ 75. However, because he styles Count 1 as a due process claim and also brings a separate equal protection claim, the Court reads Count 1 as a due process claim despite Plaintiff's apparent reference to equal protection.

4). Finally, in the Fifth Count of the Complaint,[10] Plaintiff raises claims of "racketeering

violations," or RICO violations under 18 U.S.C. §§ 1961-1968. Plaintiff contends that all of the

defendants formed an "'association-in-fact' enterprise" for the purpose of engaging in "dishonest

government services," including the dual tracking that Plaintiff alleges resulted in the unlawful

foreclosure on his property and related harms. *Id.* ¶¶ 92-95. Through these claims, Plaintiff seeks

a declaration that Defendants' conduct amount to constitutional violations, injunctive relief

against the defendants, compensatory and punitive damages for his injuries, the issuance of a

Civil Investigative Demand, and any other relief that the Court deems appropriate.

For the reasons discussed below, the Court shall not address Plaintiff's claims on the

merits, but rather finds that the Court lacks subject matter jurisdiction and must dismiss

Plaintiff's claims accordingly.

## II.  LEGAL STANDARD

A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject matter

jurisdiction.  In determining whether there is jurisdiction, the Court may "consider the complaint

supplemented by undisputed facts evidenced in the record, or the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground*

*Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome*

*Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he

district court may consider materials outside the pleadings in deciding whether to grant a motion

to dismiss for lack of jurisdiction."). "At the motion to dismiss stage, counseled complaints, as

well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible

---

[10] Plaintiff's complaint labels this final Count as "Count 4;" however, the Court understands this
to be a mere typographical error and shall refer to the claims asserted therein as either "Count 5"
or "the RICO Claims."

inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429

F.3d 1098, 1106 (D.C. Cir. 2005).  In spite of the favorable inferences that a plaintiff receives on

a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a

preponderance of the evidence.  *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90

(D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the

complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual

allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in

resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*,

503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted). *See

also Bradley v. DeWine*, 55 F. Supp. 3d 31, 37 (D.D.C. 2014) (articulating the legal standard to

be applied in assessing defendants' challenge to the court's subject-matter jurisdiction where, as

here, the *pro se* plaintiff sought relief in the federal district court regarding the state foreclosure

decree) (quoting *Bailey v. WMATA*, 696 F. Supp. 2d 68, 71 (D.D.C. 2010)); *Jerome Stevens

Pharms. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

### III. DISCUSSION

The Mortgage Defendants and Judge Seeliger have moved to dismiss Plaintiff's

Complaint on numerous different grounds, many of which the Court need not and shall not

reach. Judge Seeliger seeks dismissal on the grounds that: (1) the Court lacks personal

jurisdiction over him, Seeliger Mot. to Dismiss at 10-12; (2) the Court lacks subject matter

jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine, *id.* at 12-15; (3)

Plaintiff's claims are barred by collateral estoppel, *id.* at 15-17; (4) he is protected against civil

suits by judicial immunity, *id.* at 17-18, 22-23; and (5) Plaintiff has failed to state a claim upon

which relief can be granted, *id.* at 18-22. The Mortgage Defendants also assert collateral estoppel

as grounds for dismissal, Mortgage Defs.' Mot. to Dismiss at 12-13, and independently raise two additional bases for dismissal: (1) the Complaint fails to meet the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure in that it lacks a "short and plain statement of the claim," but rather its "allegations amount to mere hollow legal conclusions, void of any supporting factual detail required by Rule 8," *id.* at 7; and (2) service was technically deficient as the summonses that Mortgage Defendants received had not been executed by the Clerk of the Court, *id.* at 8.

Because the Court finds that it lacks jurisdiction over the claims asserted against Judge Seeliger and the Mortgage Defendants under the *Rooker-Feldman* doctrine, the Court shall limit its discussion to this jurisdictional basis for dismissal. *See Terry v. Dewine*, 75 F. Supp. 3d 512, 520 (D.D.C. 2014) (internal quotation marks and citations omitted) ("Generally, courts must evaluate a motion to dismiss for lack of subject matter or personal jurisdiction prior to considering a motion to dismiss for failure to state a claim. . . . [A] court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim.").

While only Defendant Seeliger raises the *Rooker-Feldman* doctrine as a bar to the Court's jurisdiction, the Court examines the issue with respect to the Mortgage Defendants as well. A careful examination of Plaintiff's Complaint, both accepting as true his factual allegations and liberally construing his claims, nonetheless reveals that at their core, Plaintiff's claims in this action constitute a challenge to the judgment against him in the Georgia state court Confirmation Action. To the extent that the relief Plaintiff seeks is the invalidation of the judgment rendered by the Georgia state court, these claims are barred by the *Rooker-Feldman* doctrine. Because this doctrine is one of jurisdiction, even though the Mortgage defendants have not raised it themselves, "this Court must raise the issue of subject matter jurisdiction over the

claims against [them] *sua sponte*." *Terry*, 75 F. Supp. 3d at 520; *see also NetworkIP, LLC v. F.C.C.*, 548 F.3d 116, 120 (D.C. Cir. 2008) (explaining that it is "axiomatic" that courts may raise issues of subject matter jurisdiction *sua sponte* and further articulating that "we *must* raise it, because while arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice, we are forbidden—as a court of limited jurisdiction—from acting beyond our authority, and 'no action of the parties can confer subject-matter jurisdiction upon a federal court.'" (quoting *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982))).

Under the *Rooker-Feldman* doctrine, which derives its name from *Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (citing *Feldman*, 460 U.S. at 482; *Rooker*, 263 U.S. at 416). Pursuant to this doctrine, federal district courts do not have the "authority to review final judgments of a state court in judicial proceedings," *Feldman*, 460 U.S. at 482, or to decide federal constitutional claims that are so "inextricably intertwined with a state court decision that the district court is in essence being called upon to review the state-court decision," *Stanton v. Dist. of Columbia Court of Appeals*, 127 F.3d 72, 75 (D.C. Cir. 1997) (quoting *Feldman*, 460 U.S. at 483-84). The *Rooker-Feldman* doctrine is based on the jurisdictional grant codified in 28 U.S.C. § 1257, which authorizes only the Supreme Court to exercise appellate jurisdiction over state court judgments. *See* 28 U.S.C. § 1257(a). "The *Rooker-Feldman* doctrine prevents lower federal courts from hearing cases that amount to the functional equivalent of an appeal from a state court." *Gray v. Poole*, 275 F.3d 1113, 1119 (D.C. Cir. 2002). Even where a federal district

court might have had subject-matter jurisdiction over a matter had the claims *first* been brought in that court, the *Rooker-Feldman* doctrine bars the court from hearing the matter if the claim was already adjudicated in state court when the action subsequently brought in federal court asks the "District Court to overturn an injurious state-court judgment." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005) (clarifying the basis for and scope of this abstention doctrine).

### A.  Foreclosure on Plaintiff's Property

The Court finds that because Plaintiff is invoking the United States Constitution and other federal statutes to challenge the propriety of the judicial foreclosure on his property, Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. Although Plaintiff styles his claims as arising under various federal statutes and constitutional protections, even a liberal reading of his Complaint makes clear that he seeks the invalidation of the judicial foreclosure on his property. For the Court to hear these claims would "amount to the functional equivalent of an appeal from a state court."  *Gray*, 275 F.3d at 1119. Indeed, the essence of Plaintiff's claims is that both Judge Seeliger and the Mortgage Defendants "conspired to abuse the judicial process in order to unlawfully deprive him of his property." *Bradley*, 55 F. Supp. 3d at 42 (finding plaintiff's claims barred under the *Rooker-Feldman* doctrine where "[f]ar from being 'independent' of the [state-court] judgment, the 'core' of [plaintiff's] claims is that the state-court judgment was fraudulent and therefore invalid"). Plaintiff asks this Court to review the procedures followed by the Mortgage Defendants that preceded the Confirmation Action, over which Judge Seeliger presided.[11] During those proceedings, Plaintiff had the opportunity to

---

[11] Plaintiff's allegations as to the involvement of and wrongdoing by Judge Seeliger are wholly confined to his presiding over the Confirmation Action in DeKalb County Superior Court. It is well settled that "[j]udges enjoy absolute immunity from suits for money damages for all actions

challenge the legitimacy of the actions of the Mortgage Defendants, and Plaintiff's

dissatisfaction with the outcome—the confirmation of the foreclosure sale—does not create an

exception to the jurisdictional bar on this Court from reviewing the state-court judgment. Indeed,

appropriate appellate review was available to Plaintiff. Not only did the DeKalb County Superior

Court entertain and deny Plaintiff's Motion for Reconsideration, but the Court of Appeals for the

State of Georgia also considered and dismissed his appeal for lack of jurisdiction. *Laverpool v.*

*Taylor, Bean & Whitaker Mortgage Corp.*, No. A15A2293 (Ga. Ct. App. Aug. 26, 2015) (Order

dismissing appeal); *see supra* Section I.B. Plaintiff cannot seek here the relief that he could not

obtain in state court.[12]

---

taken in the judge's judicial capacity, unless these acts are taken in the complete absence of all jurisdiction." *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993). Absolute immunity shields judges from suit because "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles v. Waco*, 502 U.S. 9, 10 (1991). That immunity "is not overcome by allegations of bad faith or malice," *id.* at 11, and applies even if the challenged action was "in error . . . or was in excess of [the judge's] authority," *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). The "remedy for alleged mishandling of a prior case is . . . an appeal or appeals in the prior case." *Smith v. Scalia*, 44 F. Supp. 3d 28, 42 (D.D.C. 2014) (internal quotation marks omitted). Plaintiff fails to put forward any evidence suggesting that Judge Seeliger was acting "in the complete absence of all jurisdiction." *Sindram*, 986 F.2d at 1460. Plaintiff's conclusory allegations that Judge Seeliger "became an accomplice and co-conspirator" in the violation of his rights by the Mortgage Defendants only confirms that the wrongs that Plaintiff alleges against Judge Seeliger were entirely confined to his judicial role in presiding over the Confirmation Action. *See* Compl. ¶¶ 78-79. Furthermore, Plaintiff's bald allegation that the absence of a landlord-tenant relationship between the Mortgage Defendants and himself left the DeKalb County Superior Court "in want of Jurisdiction" is unavailing. *Id.* at ¶ 79. Therefore, not only does this Court lack jurisdiction over Plaintiff's claims against Judge Seeliger under the *Rooker-Feldman* doctrine, but his claims against Judge Seeliger are also barred by judicial immunity.

[12] It bears mention once again that Plaintiff has also already challenged the legitimacy of these foreclosure proceedings in federal court. His wrongful foreclosure claims, heard by the United States District Court for the Northern District of Georgia were not barred by the *Rooker-Feldman* doctrine in the matter before District Court for the Northern District of Georgia as the state court judgment confirming the foreclosure sale had not yet become final. *See Laverpool II*, 2005 WL 8179844, at *1-2. Plaintiff did, however, have the opportunity there to litigate many of the theories according to which he challenges the foreclosure on his property in this action. The

In similar cases where plaintiffs' particular claims have related to state-court judicial foreclosure proceedings, this Court and other courts of this district have similarly concluded that the *Rooker-Feldman* doctrine barred such litigation. *See, e.g.*, *Liebman v. Deutsche Bank Nat'l Trust Co.*, 15 F. Supp. 3d 49, 56 (D.D.C. 2014) (finding that the Court lacked subject matter jurisdiction where plaintiffs' claims "in essence contest[ed] the validity" of the state judicial foreclosure action against them); *Glaviano v. J.P. Morgan Chase Bank, N.A.*, No. 13cv2049, 2013 WL 6823122, at *2 (D.D.C. Dec. 27, 2013) ("Under the *Rooker-Feldman* abstention doctrine, the Court lacks jurisdiction to hear what amounts to the Plaintiffs' challenge to decisions of California state courts."); *Davenport v. Dore*, No. 13cv1007, 2013 WL 3438482, at *2 (D.D.C. Jul. 9, 2013) ("[Plaintiff] asks this federal district court to review rulings of the Circuit Court of Maryland for Howard County, a state court.  The Court lacks jurisdiction over the Complaint under *Rooker-Feldman* and . . . it must be dismissed."); *Hunter v. U.S. Bank Nat. Ass'n*, 698 F. Supp. 2d 94, 100 (D.D.C. 2010) ("All of the injuries alleged in the Complaint stem from the foreclosure of the Property, and [plaintiff] is explicitly seeking a judgment from this

---

district court dismissed Plaintiff's claims on the merits, finding that he had failed to state a viable claim for relief. In so doing, the court rejected Plaintiff's claims and found that the defendants there, including the Mortgage Defendants, did have the authority and standing to foreclose on his property; that the dual tracking of which Plaintiff complained does not "support a claim for wrongful foreclosure"; and that his failure to show that he was current on his loan obligations and had made proper payments "defeats any claim for wrongful foreclosure." *Id.* at *4-5. Plaintiff sought appellate review of this dismissal before the United States Court of Appeals for the Eleventh Circuit, which, in an order denying his motion to proceed *in forma pauperis*, characterized the appeal as "frivolous" after substantively reviewing the district court's dismissal. *Laverpool II*, No. 15-15780 (11th Cir. Nov. 9, 2016) (Order denying motion for IFP status). If this Court had jurisdiction to entertain Plaintiff's claims, he would nonetheless be collaterally estopped from relitigating the issues that he already raised or should have raised in this prior federal action as under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Sheppard v. District of Columbia,* 791 F. Supp. 2d 1, 4 (D.D.C. 2011) (quoting *Drake v. FAA,* 291 F.3d 59, 66 (D.C. Cir. 2002)).

Court that would have the effect of modifying the state court's judgment of foreclosure.");

*Tremel v. Bierman & Geesing, LLC*, 251 F. Supp. 2d 40, 45-46 (D.D.C. 2003) ("What the

plaintiff has done, in effect, is to seek the equivalent of appellate review by this Court of a state

court judgment by claiming that he has suffered injuries as a direct result of the foreclosure

proceedings.").

Here, Plaintiff's claims fare no better. For Plaintiff to prevail on his claims against the

Mortgage Defendants and Judge Seeliger, this Court would have to find, simply stated, that the

foreclosure proceedings were improper and that Judge Seeliger's confirmation of the foreclosure

sale was in error. The very essence of Plaintiff's claims is that the alleged flaws in the Georgia

foreclosure process that allows for dual tracking culminated in the state court judgment

confirming the foreclosure sale, by which Judge Seeliger and the Mortgage Defendants

"conspired to abuse the judicial process in order to unlawfully deprive him of his property."

*Bradley*, 55 F. Supp. 3d at 42. The injuries that Plaintiff alleges are the direct result of the state

court judgment in the Confirmation Action whereby the sale of his property was confirmed.

Accordingly, Plaintiff asks this court to find "that the state court wrongly decided the issues

before it" when it confirmed the foreclosure sale of his property, and this Court's review of his

claims would therefore be "inextricably intertwined" with the state court judgment. *Araya v.

Bayly*, 875 F. Supp. 2d 1, 3-4 (D.D.C. 2012) (internal quotation marks and citation omitted),

*aff'd*, No. 12-7069, 2013 WL 500819 (D.C. Cir. Jan. 18, 2013). This is the very sort of claim that

the *Rooker-Feldman* doctrine strips the federal court of jurisdiction to hear. This Court is

prohibited from entertaining a "claim that the state judgment itself violates the loser's federal

rights," *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994), and therefore lacks jurisdiction over

Plaintiff's claims as they relate to the Confirmation Action.

18

### B.       Foreclosure Practices More Broadly

To the extent that Plaintiff's Complaint may be construed as presenting broader claims

and requesting relief beyond redress of his own injuries—including an injunction prohibiting

Defendants from "pursuing the course of conduct complained of herein," Compl. ¶ 99(b)—even

these broader claims are inextricably intertwined with the state court judgment. The essence of

Plaintiff's claims is that the Mortgage Defendants and Judge Seeliger "conspired" to deprive him

of his property and that his constitutional rights were violated when the application of Georgia

foreclosure law allowed "the State and the Corporations to defraud the Government of funds set

aside for its citizens," *id.* ¶ 42, and to "put Fraud on the Court," *id.* ¶ 44. Plaintiff's constitutional

claims even when couched in these broader terms, therefore, do not stand independent of the

challenge he raises to the state court judgment, but rather are inextricably intertwined therewith.

Accordingly, they too are barred by the *Rooker-Feldman* doctrine.

"Applying *Rooker-Feldman* requires us to draw a line between permissible general

challenges to rules and impermissible attempts to review judgments. And *Feldman* also tells us

that even a constitutional claim pled as a general attack may be so 'inextricably intertwined' with

a state court decision that 'the district court is in essence being called upon to review the state-

court decision.'" *Stanton*, 127 F.3d at 75 (citation omitted). "[A] facial challenge to the

constitutionality of the rule applied by the state court in the prior proceedings" *is* sufficiently

independent so as not to be barred by the *Rooker-Feldman* doctrine. *Bradley*, 55 F. Supp. 3d at

41. However, where there is "no substance" to the constitutional challenge "other than [a]

challenge to the . . . application of the rules in [plaintiff's] case," the purportedly broader

constitutional challenge lacks the independent core required for such claims to proceed in federal

court. *Stanton*, 127 F.3d at 76.

While Plaintiff's Complaint presents his claims related to the foreclosure of his own property within a broader framework of the mortgage industry and Georgia foreclosure law, any constitutional challenge that he brings has no substance or independent core beyond their application to him and his own injury. Plaintiff alleges that the Mortgage Defendants "have a consistent pattern and practice [of] unfair and deceptive practices [in their] loan servicing activities." Compl. ¶ 31. The alleged pattern and practice of misconduct includes "Dual Tracking" exploits a "void in Georgia law [which] opens the door for the State and the Corporations to defraud the Government of funds set aside for its citizens," *id.* ¶ 42, and to "put Fraud on the Court," *id.* ¶ 44. Plaintiff does not, however, provide any specific support for his allegations beyond those relating to the handling of his own mortgage and the foreclosure sale of his property.[13] His claims that to the extent Georgia law allows for dual tracking, it is constitutionally defective, is not separable from the dual tracking objection that he raised in state court and the claims particular to the foreclosure on his property. To be sure, Plaintiff is dissatisfied with Judge Seeliger's alleged response to his dual tracking objection, which Plaintiff relates as follows: "I don't know what Dual-Tracking is so I am going to rule in the Petitioner's favor. This is my first time hearing about this." *Id.* ¶ 37. In confirming the foreclosure sale of the Property, however, Judge Seeliger applied the relevant Georgia law, reviewed the procedure that Mortgage Defendants had followed and concluded that they had "fulfilled all of the legal requirements of conducting a non-judicial foreclosure sale required by statute, including notice,

---

[13] Plaintiff mentions and appends as Exhibit B to his Complaint a press release relating to the conviction of the former chief financial officer of Taylor Bean & Whitaker Mortgage Corp. of various fraud-related offenses. Compl. ¶ 31. The fraud at issue there, however, did not relate to TBW's mortgage or foreclosure practices, but rather to the falsification of financial statements and other misrepresentations that "contributed to the collapse of TBW and Colonial Bank." *Id.*, Ex. B at 1.

advertisement, and conduct of sale." Seeliger Mot. to Dismiss, Ex. B at 2. Plaintiff's allegations of broader misconduct by Mortgage Defendants are more properly construed as providing background information surrounding Plaintiff's claims against these Defendants rather than as bringing a facial challenge to the constitutionality of Georgia foreclosure law.

Similarly, Plaintiff's request for broader injunctive relief does not alter the nature of his claims, and therefore does not bring them outside the scope of the *Rooker-Feldman* doctrine. Plaintiff asks the Court to prohibit Defendants from "pursuing the course of conduct complained of herein," Compl. ¶ 99(c), to require the Mortgage Defendants and "similar banks to have a system and/or training in place that receives ALL Loan Modifications applications by computer," *id.* ¶ 98(e), and also "requests a Civil Investigative Demand (CID) Order 12 U.S.C.A. § 55[6]2(e); 12 C.F.R. § 1080.10," *id.* ¶ 99(f).

Before proceeding further with the analysis of the relief Plaintiff requests, his request for a civil investigative demand requires brief explanation. The provisions of the Dodd-Frank Act[14] surrounding those to which Plaintiff refers relate to the function and powers of the Bureau of Consumer Financial Protection ("CFPB" or "the Bureau"),[15] including the authority to issue civil investigative demands ("CID")[16] and to seek enforcement of CIDs by the district court.[17] The Dodd-Frank Act creates the CFPB as an Executive agency,[18] "authorized to enforce Federal consumer financial law consistently for the purpose of ensuring that all consumers have access to

---

[14] Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. §§ 5301-5641 (2015).

[15] 12 U.S.C. §§ 5481-5603.

[16] 12 U.S.C. § 5562(c).

[17] 12 U.S.C. § 5562(e).

[18] 12 U.S.C. § 5491(a).

markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive"[19] and confers upon it specifically articulated powers. The Bureau's investigative power is discretionary, not mandatory, and its authority to issue CIDs is specifically set out as follows: "Whenever the Bureau has reason to believe that any person may be in possession, custody, or control of any documentary material or tangible things, or may have any information, relevant to a violation, the Bureau *may*, before the institution of any proceedings under the Federal consumer financial law, issue in writing, and cause to be served upon such person, a civil investigative demand." 12 U.S.C. § 5562(c)(1) (emphasis added). Furthermore, the statute does not specifically provide a mechanism for the district court to issue a civil investigative demand (although, as noted above, the Bureau may seek assistance in the enforcement of its CIDs from the district court) nor to order the Bureau to issue a CID, and Plaintiff has not directed the Court's attention to any alternative source of authority for it to do so. Even though it is far from clear that the Court would have the power to grant Plaintiff the relief he requests pursuant to the Dodd-Frank Act, this request suggests that the remedy he seeks may be construed as extending beyond redress of his own injuries.

However, the Court finds that Plaintiff's suggestion that the Georgia foreclosure law runs afoul of the Dodd-Frank Act and constitutional protections does not amount to a facial challenge cognizable by this Court. Plaintiff's constitutional challenges to the Georgia foreclosure law is no more than an effort to re-frame in more general terms his dissatisfaction with the outcome of the foreclosure proceedings confirmed by Judge Seeliger. His Complaint does not allege substantive constitutional violations separate from the loss of his property through the foreclosure sale confirmed by Judge Seeliger. Unlike in *Stanton*, where plaintiff's facial

---

[19] 12 U.S.C. § 5511(a).

challenge to the composition and procedures of the D.C. Board of Professional Responsibility had a "discernible core" that stood "independent of" his claims related to the Board's rulings in his particular case, Plaintiff's constitutional challenges here lack that "independent" and "discernible core." *Stanton*, 127 F.3d at 76. Here, the substance of Plaintiff's claims relates exclusively to the Georgia foreclosure law *as applied to him*, and for Plaintiff to prevail on his claims, this Court would have to find "that the state court wrongly decided the issue before it." *Araya*, 875 F. Supp. 2d at 4 (internal quotation marks and citations omitted). Accordingly, the Court finds that Plaintiff's claims are barred in their entirety by the *Rooker-Feldman* doctrine.

### C.  Plaintiff's Motion to Amend

Plaintiff has sought leave to file an amended complaint, and has filed with his motion the proposed amended complaint. The Court has reviewed the proposed amended complaint, and finds that were the Court to permit it to be filed, it would not cure the jurisdictional defects that prevent this Court from entertaining Plaintiff's claims. Accordingly, for the reasons set forth below, the Court denies the Motion to Amend as futile.

Under the Federal Rules of Civil Procedure, a party may amend its pleadings once as a matter of course within twenty-one days after service or within twenty-one days after service of a responsive pleading. Fed .R. Civ. P. 15(a)(1). Where, as here, a party seeks to amend his pleadings outside that time period, he may do so only with the opposing party's written consent or the district court's leave. Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend a complaint is within the discretion of the district court, but leave should be freely given unless there is a good reason to the contrary. *Willoughby v. Potomac Elec. Power Co.,* 100 F.3d 999, 1003 (D.C. Cir. 1996). "When evaluating whether to grant leave to amend, the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4)

bad faith; and (5) whether the plaintiff has previously amended the complaint." *Howell v. Gray,* 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (citing *Atchinson v. District of Columbia,* 73 F.3d 418 (D.C. Cir. 1996)); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962). With respect to an amendment being futile, "a district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litig.,* 629 F.3d 213, 218 (D.C. Cir. 2010).

Here, Plaintiff's proposed amendments attempt, it appears, to more clearly articulate his claims as including facial challenges to the constitutionality of the Georgia foreclosure statutes. The introductory language of his proposed amended complaint purports to reframe his claims as challenging the "unconstitutionality of the State of Georgia's foreclosure and Dispossessory Statutes pertaining to notice to its citizens. The Statutes at minimum invite arbitrary enforcements against the citizens of Georgia *specifically Plaintiff* in this matter because it conflicts with the basic due process and equal protection clauses of the U.S. Constitution in violation of 1st, 5th, 8th, 14th Amendments." Am. Compl. at 2 (emphasis added). While a facial constitutional challenge does stand independent from a challenge to state court judgment, and a properly brought facial challenge would not be barred by the *Rooker-Feldman* doctrine, this new language does not change the nature of Plaintiff's claims. Indeed, in the operative complaint, Plaintiff also alleges that Georgia's foreclosure law "are void, vague, ambiguous, and invites discriminatory and arbitrary enforcement." Compl. ¶ 35.

Similarly, Plaintiff adds the vast majority of new language in his Amended Complaint to Count I, in articulating his theory of § 1983 Due Process violations.[20] In so doing, however, he only underscores the inextricable intertwinement of his constitutional claims with the Georgia

---

[20] Paragraphs 71-77 of the Amended Complaint are newly added by Plaintiff.

state court judgment. In these proposed amendments, Plaintiff alleges his constitutional injury as the loss of his property, brought about when "DeKalb County., Lithonia, Georgia, and their agents and affiliates have acted unlawfully and in bad faith by proceeding with a fraudulent sale and purchase, a theft, of Laverpool('s) property." Am. Compl. ¶ 74. Furthermore "opposing counsel in this matter . . . by his own actions in this unlawful foreclosure" has violated his Oath as an officer of the court, "thereby denying Laverpool's Right to due process of law and thereby putting fraud upon the court." *Id.* ¶ 75. Plaintiff's proposed added language relating to Judge Seeliger's involvement in the Due Process violations is similarly confined to his presiding over the Confirmation Action both in violation of his Judicial Oath and thereby rendering the proceedings constitutionally defective. *Id.* ¶ 76.

Plaintiff's proposed amendments to the complaint do nothing to establish his claims as independent of the state court judgment that he is barred from challenging in the district court. Rather, just like in *Bradley* and as discussed *supra*, the "'core' of [his] claims is that the state-court judgment was fraudulent and therefore invalid." *Bradley*, 55 F. Supp. 3d at 43. Because Plaintiff's claims even under the Amended Complaint would remain inextricably intertwined with the state court judgment, they do not cure the jurisdictional defect. Accordingly, the Court finds that the proposed amended complaint would not survive a motion to dismiss and it would thus be futile to grant Plaintiff his requested leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's claims against the Mortgage Defendants and against Judge Seeliger constitute a challenge to the final state court judgment confirming the foreclosure sale of his property, and that, accordingly, Plaintiff is barred from

bringing this challenge in Federal Court under the *Rooker-Feldman* doctrine. Plaintiff's proposed Amended Complaint fails to cure this jurisdictional defect.

Accordingly, the Court GRANTS the separate Motions to Dismiss of Judge Seeliger and of the Mortgage Defendants and DENIES Plaintiff's Motion to Amend.

All claims against the Mortgage Defendants and against Judge Seeliger, therefore, are DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction.

An appropriate Order accompanies this Memorandum Opinion.


        /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge